IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2005

## STATE OF TENNESSEE v. JAMES VANOVER

**Appeal from the Criminal Court for Knox County**
**No. 75139     Mary Beth Leibowitz, Judge**

_____

**No. E2005-01192-CCA-R3-CD - Filed March 2, 2006**

_____

A Knox County Criminal Court jury convicted the defendant, James Vanover, of one count of rape of a child, a Class A felony, and two counts of aggravated sexual battery, a Class B felony, and the trial court sentenced him to twenty years for the rape and eight years for each aggravated sexual battery to be served consecutively at 100% for an effective sentence of thirty-six years in the Department of Correction. The defendant appeals, claiming that the evidence is insufficient and that his sentence is excessive. We conclude that the evidence is sufficient, but we conclude that the trial court improperly ordered consecutive sentencing. We remand the case to the trial court for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part,**
**Reversed in Part, Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, James Vanover.

Paul G. Summers, Attorney General and Reporter; Jane L. Beebe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kevin J. Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's unlawful sexual conduct with the victim, a child under the age of thirteen at the time of the offenses. At the trial, Teresa Diane Wakefield testified that she was the victim's aunt. She said that she lived on Deaderick Road and that most of her immediate family, including the victim, also lived on Deaderick Road. She said she knew the defendant because he had been dating her sister, the victim's mother. She said the defendant often would stay with the victim and her mother. She said that she was very close to the victim and that she spent a lot of time with her.

Ms. Wakefield testified that in October 2001, she noticed a change in the victim's behavior. She said the victim was not as happy, "and she would just hang her head down like she [was] worried about something." She said that she asked the victim if anything was wrong and that the victim began crying. She said the victim told her what was wrong.

Ms. Wakefield said she was present the following day at the hospital. She said she stayed in the room with the victim while the doctor examined her vagina. She said the victim was very upset and scared.

On cross-examination, Ms. Wakefield acknowledged that she never thought the defendant was an appropriate boyfriend for her sister. She admitted asking the victim on one or two other occasions if "something funny wasn't going on with her[.]" Ms. Wakefield denied telling a representative of the Department of Children's Services that she did not trust men around the victim.

The victim testified that she was twelve years old. She said that she called the defendant "dad" when he lived with her but that most people called him "Bug." The victim said the defendant began touching her "private parts" when she was six years old. She said he would normally rub her vagina. She said that on many occasions, the defendant would "either put his hand down there under my clothes or take my hand and put it under his clothes." She said the defendant made her touch his penis.

The victim testified that on one occasion, she was sitting on top of the defendant in her nightclothes when he "unbuttoned his pants, and he put his penis into my vagina halfway but not all the way, because I got off of him, and I said I had to go use the bathroom . . . ." She said that after her brother moved away from home, the abuse got worse because she was left alone more often with the defendant. She said that she did not know how many times the defendant touched her but that it was quite a few times. She said she thought she touched the defendant more times than he touched her.

The victim testified that on another occasion the defendant came into the bathroom while she was taking a shower, pulled back the shower curtain, and said, "Let me see you." She said she could not remember if her mother was home but thought she was in the living room. She said that later that night, the defendant told her if she refused to get on top of him underneath the covers, he would kill her mother. She said the defendant stuck his penis in her vagina, but again only halfway. She said he stopped because her mother was coming into the adjacent room. She said the defendant's raping her hurt. She said she did not tell her mother because she was afraid the defendant would kill her mother. She said she told her aunt what happened a few weeks later because she did not want it to happen again.

The victim testified that she specifically remembered touching the defendant's penis while in his camper, which was parked outside their house. She said she specifically remembered the defendant touching her vagina in his camper just before her mother walked in with some pillows. The victim said she never told anyone about the defendant's touching or raping her because she was

afraid he would hurt her or her family.  The victim said she was not mad at the defendant for any other reason.

On cross-examination, the victim acknowledged that every time she went to her aunt's house, her aunt would ask her about the defendant and if anything was wrong.  The victim maintained that the defendant inserted his penis into her vagina on two separate occasions.  The victim admitted telling a worker from the Department of Children's Services that the defendant had on one occasion tried to put his penis inside her.  She explained, however, that the discrepancy between that statement and her trial testimony was based upon her understanding things better as she got older.  The victim admitted that she did not bleed when the defendant put his penis inside her vagina.

Dr. Jerrod Michael Connors, a pediatric emergency physician at East Tennessee Children's Hospital, testified that he examined the victim.  He said that during his examination, the victim told him that her stepdad had touched her in her private area.  He read the following statement of the victim to the jury:

> I was seven, lived in Deaderick, and [the defendant] made me look at his penis.  When we lived on Asbury, he tried to make me look at his thing, did lots of times.  Did not touch me; I did not touch him.
>
> Since we were at this house, we were on the way to the store and we went back roads.  Pulled private out and asked me to see it, and I wouldn't, so put it back in his pants.
>
> A couple of days later, I was in bedroom and listening to music.  I think mom was asleep.  He came in there and asked if he could see my private.  I wouldn't let him.
>
> A few days later he tried to hold me down.  He put his private . . . put halfway in my vagina, put in halfway and took it out.  And then left and went downstairs.  Keeps asking me to see his privates.

Dr. Connors said he found the victim's hymen to be abnormal due to an opening in the hymen.  He said, however, that subsequent medical literature suggested that the opening was not necessarily indicative that a penis or a tampon had pierced the hymen.  Dr. Connors testified that he could not be certain whether the victim's hymen had been pierced.  On cross-examination, Dr. Connors admitted that it was very hard to prove that a sexual penetration did not occur.  He said that when a sexual penetration would occur, the results of a medical exam would normally be inconclusive.

The defendant testified that when he first met the victim, she was a baby.  He said he thought of the victim as a daughter based upon his relationship with the victim's mother.  He said that he never touched the victim inappropriately, that he never asked the victim to touch him

inappropriately, and that he never raped her. The defendant said he did not know why the victim was making false allegations against him and denied ever threatening the victim or her family.

Based upon this evidence, the jury convicted the defendant of one count of rape of a child and two counts of aggravated sexual battery. On appeal, the defendant claims the evidence is insufficient and his sentence is excessive. The state responds that the evidence is sufficient and that the trial court did not err in sentencing the defendant.

## I.  SUFFICIENCY OF THE EVIDENCE

The defendant contends his testimony was credible and the victim's incredible. He claims his testimony is buttressed by Dr. Connor's testimony that the results of his examination of the victim were inconclusive. The defendant argues that "at least some corroboration [of the victim's testimony] should be necessary to convict in the face of flat denial that the events took place at all." The state contends that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim . . . [if] [t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4). "Sexual contact" is defined as "the intentional touching of the victim's, the defendant's, or any other person's intimate parts . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6).

At the trial, the victim testified that the defendant raped her on two occasions by inserting his penis into her vagina. She also testified that she touched the victim's penis and that he touched her vagina. The defendant denied the victim's allegations. We conclude that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of one count of rape of a child and two counts of aggravated sexual battery.

Concerning the defendant's argument that a victim's uncorroborated testimony should never constitute sufficient evidence in the face of a defendant's "flat denial," we note this court has held that a victim's uncorroborated testimony constitutes sufficient evidence. See Montgomery v. State, 556 S.W.2d 559, 560 (Tenn. Crim. App. 1977). The defendant is not entitled to relief on this issue.

-4-

## II.  EXCESSIVE SENTENCE

The defendant contends his sentence is excessive.  He claims the trial court improperly enhanced his sentences by the imposition of consecutive sentencing because it could not otherwise enhance his sentences under the rule announced in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004).  He also claims the trial court erred under state law in imposing consecutive sentencing. The state contends that Blakely is inapplicable and that the trial court did not err in ordering the defendant to serve his sentences consecutively.

No one testified at the sentencing hearing.  However, the state introduced the defendant's presentence report into evidence.  The report states that the defendant dropped out of high school in the eleventh grade and that he never received a high school diploma or GED certificate.  It reflects that the defendant has an extensive criminal history involving misdemeanors, having been convicted of driving on a suspended license, driving on a revoked license (seven times), driving under the influence of an intoxicant, public intoxication, and resisting arrest.  After considering the arguments of counsel and the information contained within the presentence report, the trial court stated:

> [The defendant] has now been convicted of three statutory offenses against a minor child, which the State is arguing in 40-35-115(5), may allow consecutive sentencing.
>
> And while I agree with you that Blakely controls enhancing factors in this situation, I think enhancement factor No. 2, this previous history is–is permissible.  I do not think–I agree with you that I don't think that the victim was found particularly vulnerable in any respect that would add to the concept of rape of a minor child, a child under 12.
>
> That it involved a victim, I think it's pretty clear that this is probably not something that I can put much weight on.  And that it abused a position of private trust; that is, this was the–she wasn't his stepchild, but she–he was in the position of a father figure to her.
>
> For those reasons, I think that it's necessary for me to enhance and give a consecutive sentence as to Count Two.  So I'm going to make that one consecutive, and I'm also going to make Count Three consecutive for the same reason.  So you're looking at a total effective 36 years as a Range–well, it's a hundred percent sentence in this situation, I guess.

(Emphasis added).

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003).[1] As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Unless enhancement factors are present, the presumptive sentence to be imposed is the midpoint in the range for a Class A felony and the minimum in the range for a Class B felony. T.C.A. § 40-35-210(c) (2003). Our sentencing act provides that, procedurally, the trial court is to increase the sentence within the range based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Id. § 40-35-210, Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.

In conducting our de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

---

[1] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 6, 8. However, the amended code sections are inapplicable to the defendant's appeal.

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the court may order sentences to run consecutively if it finds by a preponderance of the evidence that the defendant stands

> convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

T.C.A. § 40-35-115(b)(5). Rule 32(c)(1) of the Tennessee Rules of Criminal Procedure requires that the trial court "specifically recite the reasons" behind its imposition of a consecutive sentence. See, e.g., State v. Palmer, 10 S.W.3d 638, 647-48 (Tenn. Crim. App. 1999) (noting the requirements of Rule 32(c)(1) for purposes of consecutive sentencing).

We note that the record is devoid of the trial court's consideration of the factors delineated in Tennessee Code Annotated section 40-35-115(b)(5), which, if present, would have justified its imposition of consecutive sentences. Moreover, the record shows the trial court improperly used enhancement factors to justify consecutive sentencing. We conclude that resentencing would be appropriate.

## CONCLUSION

Based upon the foregoing and the record as a whole, we affirm the trial court relative to the evidence justifying the defendant's conviction for one count of rape of a child and two counts of aggravated sexual battery. However, we vacate the defendant's sentences and remand this case to the trial court for resentencing.

_____
JOSEPH M. TIPTON, JUDGE